IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-248-FL

| | |
|---|---|
| XAVIER EARQUHART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MOLLY WHITLATCH, JOSEPH KALO, ) | |
| IV; DAVID BARBER; TRACI D. FIDLER; ) | |
| GLENDA TEER; PAM THOMAS; and ) | |
| BECKY WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

This case comes before the court on: (1) a motion to dismiss by defendants Joseph Kalo, IV and Molly Whitlatch (collectively "attorney defendants") (D.E. 16); (2) a motion to dismiss by defendants Traci D. Teer Fidler ("Fidler") and Glenda Teer ("Teer") (collectively "Teer defendants") (D.E. 20); (3) a motion to dismiss by David Barber ("Barber"), Pam Thomas ("Thomas"), and Becky Williams ("Williams") (collectively "court defendants") (D.E. 33); and (4) a motion for a prefiling injunction by the Teer defendants (D.E. 23). The motions were referred to the undersigned Magistrate Judge for issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (*see* Public D.E. dated 4 Aug. 2014) and are ripe for adjudication. For the reasons and on the terms set forth below, it will be recommended that the dismissal motions be allowed and the motion for prefiling injunction be denied.

## BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS AND CLAIMS

On 25 April 2014, plaintiff Xavier Earquhart ("plaintiff") filed the complaint (D.E. 1) in this case, along with multiple exhibits (D.E. 1-1 to 1-13). Taking its allegations in the light most favorable to plaintiff,[1] the complaint alleges as follows:

On 3 February 2014, using his business name AASHM, LLC ("AASHM"), plaintiff placed a bid on property located at 2536 Glenkirk Drive in Burlington, North Carolina ("the property"). (Compl. ¶¶ 2, 18). On 13 February 2014, plaintiff became the successful bidder. (*Id.* ¶ 18). The property was foreclosed and conveyed to AASHM on 21 February 2014. (*Id.* ¶ 18). On 24 February 2014, Fidler, whose mother, Teer, lived at the property, contacted plaintiff with an offer of $7,500 to reclaim the property. (*Id.* ¶ 20). After some negotiation, Fidler and plaintiff did not agree on a price. (*Id.* ¶ 20). On 3 March 2014, plaintiff hand delivered a writ of possession and money order for payment of the property to Thomas, an assistant clerk with the office of the Clerk of Superior Court of Alamance County ("clerk's office"). (*Id.* ¶¶ 7, 21). When plaintiff returned to the clerk's office on 11 March 2014 to obtain a stamped copy of the writ, Thomas informed him that she had not signed it, and he noticed that it had not been stamped as filed. (*Id.* ¶ 22). When plaintiff asked Barber, the clerk, why the writ had not been signed, Barber said he would have to contact the Raleigh office to determine whether he had authority to stamp it. (*Id.* ¶¶ 9, 22).

On 12 March 2014, the Teer defendants, through the attorney defendants, commenced a suit in Alamance County Superior Court contesting the validity of the foreclosure ("state lawsuit"). (*Id.* ¶ 23; St. Ct. Compl. (D.E. 1-7)). On the same date, the verified complaint,

---

[1] This summary reflects the principles set out in part I.A. of the Discussion section below that the allegations of the complaint are to be viewed favorably toward plaintiff.

2

which included a motion for a temporary restraining order and preliminary injunction, was filed. (*Id.* ¶ 23). On 17 March 2014, the clerk's office sent back to plaintiff the unstamped writ and money order for the property he had delivered to it. (*Id.* ¶ 24). When plaintiff went to the clerk's office on 18 March 2014 to file a motion for extension of time to respond to the state lawsuit, Williams, a deputy clerk, refused to file it. (*Id.* ¶¶ 10, 25). When plaintiff returned on 19 March and 20 March 2014, Williams again refused to file his motion. (*Id.* ¶¶ 26, 27).

Plaintiff asserts five claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all defendants (*id.* ¶¶ 36-44), which includes allegations of extortion (under 18 U.S.C. § 1951 and N.C. Gen. Stat. § 14-118.4), witness tampering (under 18 U.S.C. § 1512), wire and mail fraud (under 18 U.S.C. § 1341 and § 1343[2]), and obstruction of justice (under 18 U.S.C. § 1503); (2) conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d) against all defendants (*id.* ¶¶ 45-49); (3) violation of the First and Ninth Amendments pursuant to 18 U.S.C. § 1983 against all defendants (*id.* ¶¶ 50-51); (4) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 against all defendants (*id.* ¶¶ 52-53); and (5) failure to discharge official duties in violation of N.C. Gen. Stat. § 5A-11 and § 14-230 against the court defendants (*id.* ¶¶ 54-56). Plaintiff seeks injunctive relief, compensatory damages, treble damages, attorneys' fees, and other relief. (*Id.* 28-30).

## II. MOTIONS TO DISMISS BY ALL DEFENDANTS

All the defendants move to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), although not all rely on the same theories. The court defendants also move to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), and insufficiency of service of process, pursuant to Rule 12(b)(5). Plaintiff

---

[2] Plaintiff erroneously cites to § 1344, which concerns bank fraud. (*See* Compl. ¶ 43).

3

filed responses opposing the dismissal motions by the attorney defendants and Teer defendants (*see* D.E. 40-43), but did not respond to the dismissal motion by the court defendants.

III.     MOTION FOR PREFILING INJUNCTION BY TEER DEFENDANTS

By their motion, the Teer defendants seek a prefiling injunction against plaintiff prohibiting him from making any further filings against defendants relating to this case or the state lawsuit without the court's prior express permission. Plaintiff did not file a response to this motion.

**DISCUSSION**

I.     DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) (All Defendants)

While all defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, only the court defendants assert as grounds for this contention the *Rooker-Feldman* doctrine and principles of abstention recognized in *Younger v. Harris*, 401 U.S. 37 (1971). Nevertheless, for the reasons discussed below, the court finds these provisions of law together, if not individually, dispositive of all the claims against all defendants in this case. It will accordingly confine its analysis to these grounds. The court will thereby forego as moot discussion of the other grounds for lack of subject matter jurisdiction advanced by defendants,[3] defendants' motions to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and the court defendants' motion to dismiss for insufficient service of process and lack of personal jurisdiction pursuant to Rules 12(b)(2) and (5).

   A.     **Standard of Review under Rule 12(b)(1)**

---

[3] The attorney defendants and Teer defendants challenge subject matter jurisdiction on the additional grounds that plaintiff lacks standing and that none of plaintiff's federal causes of action state a claim upon which relief can be granted.

4

Rule 12(b)(1) provides for dismissal of an action if the court lacks subject matter jurisdiction over it. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of showing federal jurisdiction on a Rule 12(b)(1) motion. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Bio-Medical Applications of N.C., Inc. v. Elec. Data Sys. Corp.*, 412 F. Supp. 2d 549, 551 (E.D.N.C. 2006). "The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case." *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) (citing *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999)).

The court's standard for review of a motion filed pursuant to Rule 12(b)(1) depends on the nature of the movant's challenge to subject matter jurisdiction. *Chong Su Yi v. Social Sec. Admin.*, No. TDC–14–0370, 2015 WL 224947, at *2 (D. Md. 14 Jan. 2015) ("A defendant can challenge subject matter jurisdiction under Rule 12(b)(1) in one of two ways; he may either assert (1) a facial challenge that the allegations pled in the complaint are not to sufficient to establish subject matter jurisdiction; or (2) a factual challenge that the allegations establishing jurisdiction are not true." (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009))). If it is argued that the complaint fails to allege sufficient facts conferring subject matter jurisdiction, all facts alleged in the complaint are assumed to be true and "and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Kimble v. Rajpal*, 566 Fed. Appx. 261, 262 (4th Cir. 2014) (noting that where defendant raises a "facial challenge" to the jurisdictional allegations, "the court must evaluate the complaint in the same manner utilized in assessing a motion to dismiss for failure to state a claim—that is, viewing the well-pleaded facts in the complaint as true."). The court may consider any documents attached

5

to the complaint in its analysis. *Brooks-McCollum v. Aspen Prop. Mgmt. Co.*, 551 Fed. Appx. 677, 679 n.* (4th Cir. 8 Jan. 2014), *cert. denied*, __ U.S. __, 134 S. Ct. 2886 (2014); *see also* Fed. R. Civ. P. 10(c). Alternatively, if the movant contests the accuracy of the jurisdictional allegations, the allegations of the complaint are treated as mere evidence, and the court may consider matters beyond the pleadings without converting the motion to one for summary judgment. *Richmond*, 945 F.2d at 768.

Here, giving plaintiff the benefit of any doubt, the court will treat the *Rooker-Feldman* and *Younger* challenges to jurisdiction as contending that the facts as alleged in the complaint fail to establish jurisdiction and will therefore treat the allegations in the complaint as true. Nonetheless, the result would be the same if the challenges were deemed to contest the accuracy of the jurisdictional allegations.

    B.    *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine bars federal courts from sitting "in direct review of state court decisions." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 (1983). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). This doctrine also prohibits a district court from reviewing constitutional claims that are "inextricably intertwined" with a state court decision. *Shooting Point, LLC v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004). A constitutional claim is "inextricably intertwined" with a state court decision if "'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)); *see also Curley v.*

6

*Adams Creek Assocs.*, 409 Fed. Appx. 678, 680 (4th Cir. 2011) (holding that *Rooker-Feldman* precluded subject matter jurisdiction over plaintiff's claim that the state court violated her due process rights by failing to give her notice before disposing of real property owned by her); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (holding that a federal claim is "'inextricably intertwined" where "in order to grant the federal relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual'" (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997))).

In other words, *Rooker-Feldman* applies "when the federal action 'essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Davis v. Durham Mental Health Devel. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 388 (M.D.N.C. 2004) (quoting *Plyer*, 129 F.3d at 733). "The key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Willner v. Frey*, 243 Fed. Appx. 744, 747 (4th Cir. 2007) (quoting *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2005)). "'[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

In *Smalley v. Shapiro & Burson, LLP*, 526 Fed. Appx. 231 (4th Cir. 2013), the Fourth Circuit ruled that the claims of borrowers challenging practices engaged in by defendants during foreclosure proceedings were barred by *Rooker-Feldman.* Specifically, in that case, the

7

borrowers instituted a federal suit charging the substitute trustees with claims under RICO, the Fair Debt Collections Act, Fair Housing Act, and Civil Rights Act, arising from their practices of supporting foreclosures with false affidavits. 526 Fed. Appx. at 232. The Fourth Circuit held that even though the plaintiffs were not seeking to "undo" the state court judgments foreclosing on their homes, their success would necessitate a determination that the judgments, which awarded legal fees and commissions in reliance on allegedly false affidavits, were erroneous. *Id.* at 236. In short, because it was the state court judgment that was the cause of plaintiffs' harm, the court held that the federal court action was barred by *Rooker-Feldman*. *Id.* at 237.

The injuries plaintiff alleges in this case result from alleged improprieties in the state court foreclosure proceedings, including but not limited to the alleged failure to properly convey the property to AASHM and facilitation of the filing of a lawsuit, the state lawsuit, challenging plaintiff's interests regarding the foreclosure proceedings. More specifically, the gravamen of plaintiff's claims is that defendants acted in concert in an effort to prevent him from obtaining possession of the property to which he was entitled pursuant to the court foreclosure proceedings. Determination of plaintiff's claims in his favor would necessarily require this court to find that the state court foreclosure proceedings were conducted in an improper manner, produced an improper result, or both. The *Rooker-Feldman* doctrine prohibits this court from making such a determination. As noted, plaintiff, albeit *pro se*, made no filing challenging application of *Rooker-Feldman* to this case. He, of course, retains access to the state courts for pursuit of his claims.

The court concludes that the *Rooker-Feldman* doctrine applies to the claims asserted by plaintiff challenging the propriety of the state court foreclosure proceedings and, consequently,

this court lacks subject matter jurisdiction over them. As the foregoing discussion indicates and while arguably open to dispute, the court deems all of plaintiff's claims to be challenging the court foreclosure proceedings for purposes of the *Rooker-Feldman* doctrine. This entire case should accordingly be dismissed pursuant to Rule 12(b)(1) in accordance with the *Rooker-Feldman* doctrine. *See Carmichael v. Irwin Mort. Corp.,* No. 5:14–CV–122–D, 2014 WL 7205099, at *3 (E.D.N.C. 17 Dec. 2014) ("This court, however, lacks subject-matter jurisdiction to sit in direct review of a North Carolina state foreclosure action."); *Everette v. Peele,* No. 5:14–CV–213–BO, 2014 WL 4961099, at *3 (E.D.N.C. 28 July 2014) ("Although Plaintiff is not explicitly requesting that the court vacate or 'undo' the state court's judgment of foreclosure, to grant relief on this claim would require a finding that the state court's judgment was in error. As such, this claim should be dismissed as barred by the *Rooker–Feldman* doctrine."), *rep. and recomm. adopted by* 2014 WL 4961102 (3 Oct. 2014); *Ruiz v. Nationstar Mortg. LLC,* No. 1:12CV272, 2013 WL 4519180, at *3 (M.D.N.C. 26 Aug. 2013) ("Plaintiff's remedy for these and the other alleged defects in the state foreclosure proceeding was to appeal through the state judicial system and then seek review in the Supreme Court of the United States. This Court lacks subject matter jurisdiction to review the state court's order."), *aff'd*, 556 Fed. Appx. 271 (4th Cir. 25 Feb. 2014).

    C.    *Younger* **Abstention**

*Younger* established the principle that federal courts should not intervene in state court criminal, civil, and administrative proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). "*Younger* and 'its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Beam v. Tatum*, 299 Fed. Appx. 243, 245 (4th Cir. 2008) (quoting *Middlesex County Ethics*

9

*Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). Abstention is required where "(1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006).

Here, it is undisputed that there is an ongoing state judicial proceeding, the state lawsuit, challenging the validity of the state foreclosure proceedings that was filed prior to the commencement of the instant case. Matters relating to foreclosure proceedings unquestionably implicate important state interests. *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns, such as land use and zoning questions, are frequently 'important' state interests justifying *Younger* abstention."); *Wilder v. Hutchens, Senter, Kellam & Pettit, P.A.*, No. 3:14–CV–00361–FDW–DCK, 2014 WL 4854599, at *3 (W.D.N.C. 30 Sep. 2014) ("Plaintiff's claims concerning the ongoing foreclosure matters clearly implicate important state interests."); *Hayes v. JP Morgan Chase Bank,* No. 3:13–cv–1884–JFA, 2014 WL 4198897, at *3 (D.S.C. 20 Aug. 2014) ("Courts in this district have recognized that 'there is an important state interest in adjudicating foreclosure matters pertaining to real property located within the state.'" (quoting *Dennis v. HSBC Mortg. Servs., Inc.*, No. 0:10–2693–MJP–PJG, 2011 WL 3876916 (D.S.C. 11 Aug. 2011))); *Ward v. Branch Banking & Trust Co.,* No. ELH–13–01968, 2014 WL 2707768, at *9 (D. Md. 13 June 2014) (holding that the state has a substantial interest in foreclosure proceedings because they implicate state property law in case where plaintiff contended that defendants submitted falsified and invalid documents in a foreclosure proceeding). Plaintiff has an adequate state forum to pursue his constitutional and other claims and has offered no opposition to dismissal on this basis although, admittedly, he is

10

proceeding *pro se*. *Thomas v. Equitable Life Mortg. and Realty Investors,* No. 3:13–130–CMC–PJG, 2013 WL 2352589, at *8 (D.S.C. 29 May 2013) (holding that plaintiff could raise his constitutional claims arising under foreclosure proceeding in state court because "'ordinarily a pending state [proceeding] provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights.'" (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975))).

The court concludes that the principle of abstention under *Younger* provides an additional ground for dismissal of plaintiff's claims as to all defendants pursuant to Rule 12(b)(1). Thus, even if the *Rooker-Feldman* doctrine were deemed not to apply to certain claims by plaintiff, such claims would be subject to dismissal pursuant to *Younger* abstention.

## II. TEER DEFENDANTS' MOTION FOR PREFILING INJUNCTION

The imposition of a prefiling injunction is a drastic remedy warranted only in exigent circumstances and is to be approached with caution. *Cromer v. Kraft Foods North Am.¸Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). "In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 818.

The court finds that the record does not warrant the relief the Teer defendants seek. The motion for the prefiling injunction should accordingly be denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the motions (D.E. 16, 20, 33) to dismiss be ALLOWED and that this action be DISMISSED pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. It is further RECOMMENDED that the motion for prefiling injunction (D.E. 23) by the Teer defendants be DENIED.

IT IS ORDERED that the Clerk shall send copies of this Memorandum and Recommendation to plaintiff, who shall have until 11 February 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 27th day of January 2015.

James E. Gates
United States Magistrate Judge